```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF IOWA
                       DAVENPORT DIVISION

A.E.S., a Minor                )    NO. 3:08-cv-00163-RAW
by TROY T. STUEDEMANN and      )
NANCY E. STUEDEMANN, her       )
Parents and Next Friends, and  )    RULING ON PLAINTIFFS'
TROY T. STUEDEMANN and         )    MOTION FOR SUMMARY
NANCY E. STUEDEMANN,           )    JUDGMENT
individually,                  )
                               )
          Plaintiffs,          )
                               )
     vs.                       )
                               )
RAYMOND SKILES, JULIE SKILES,  )
and JEFFREY FRENCH,            )
                               )
          Defendants.          )
```

Before the Court following hearing is plaintiffs' motion for partial summary judgment [32]. This is a personal injury action arising from a dog biting a child, plaintiff A.E.S. Plaintiffs filed their Complaint on December 30, 2008, making state law claims of strict liability under Iowa Code § 351.28 and general negligence. Plaintiffs seek damages for personal injuries to A.E.S., including past physical pain and mental suffering, past disability, future medical expenses and pain and suffering, and loss of full mind and body. They also seek damages for medical expenses incurred by her parents and loss of consortium. The Court has diversity jurisdiction. 28 U.S.C. § 1332(a). The case was referred to the undersigned for all further proceedings pursuant to 28 U.S.C. § 636(c).

By the present motion plaintiffs seek judgment as a matter of law that the dog, Hershey, was owned by defendants

Raymond and Julie Skiles, and Jeffrey French, for the purposes of liability under § 351.28; Mr. and Mrs. Skiles because they never relinquished legal ownership of Hershey, and Mr. French because he became an owner by taking possession of Hershey and caring for him as owners do. Alternatively, plaintiffs ask the Court to determine which of the defendants were Hershey's owner. Defendants resist, arguing the issue of ownership is a jury question.

## I.

### SUMMARY JUDGMENT

Plaintiffs are entitled to summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), presented to the court, show "'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010); *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 742-43 (8th Cir. 2009); *Carrington v. City of Des Moines, Iowa*, 481 F.3d 1046, 1050 (8th Cir. 2007)(quoting Fed. R. Civ. P. 56(c)); *see Hervey v. County of Koochiching*, 527 F.3d 711, 719 (8th Cir. 2008). A genuine issue of material fact exists "if it has a real basis in the record." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992)(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). A "genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'"

*Id. (*quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The court must view the facts in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences which can be drawn from them. *See Heartland Academy Community Church v. Waddle*, 595 F.3d 798, 805 (8th Cir. 2010); *Hervey*, 527 F.3d at 719; *EEOC v. Liberal R-II Sch. Dist.*, 314 F.3d 920, 922 (8th Cir. 2002). Reasonable inferences are "those inferences that may be drawn without resorting to speculation." *Mathes v. Furniture Brands Int'l, Inc.*, 266 F.3d 884, 885–86 (8th Cir. 2001) (citing *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir. 2001)); *see Matsushita*, 475 U.S. at 587; *Norman v. Schuetzle*, 585 F.3d 1097, 1103 (8th Cir. 2009); *Riley v. Lance, Inc.*, 518 F.3d 996, 1001 (8th Cir. 2008); *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 791 (8th Cir. 2004).

The moving party must first inform the court of the basis for the motion and identify the portions of the summary judgment record which the movant contends demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Glorvigen*, 581 F.3d at 742-43; *Robinson v. White County, Ark.*, 459 F.3d 900, 902 (8th Cir. 2006). The nonmoving party must then "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of

material fact." *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir. 1999); *see Glorvigen*, 581 F.3d at 743; *In re Patch*, 526 F.3d 1176, 1180 (8th Cir. 2008); *Thomas v. Corwin*, 483 F.3d 516, 526-27 (8th Cir. 2007); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006).

## II.

### FACTUAL BACKGROUND

Plaintiff A.E.S. is a minor. Her parents and next friends are Troy T. Stuedemann and Nancy E. Stuedemann. They are residents of Clinton, Iowa. On June 30, 2007, while the family was camping at South Sabula Lake Campground in Jackson County, Iowa, A.E.S. was bitten by a black Labrador named "Hershey," sustaining personal injury.

Hershey was at the campground with John Tipp and Lori Wurster, residents of Illinois. Mr. Tipp is the brother-in-law of defendant Jeffrey French and also works for him. Ms. Wurster was Mr. Tipp's girlfriend. (Pl. App. at 16, 47, 53).

Defendants Raymond and Julie Skiles are husband and wife. They live in Savanna, Illinois. Mr. Skiles works for two businesses owned by defendant Jeffrey French, who is also an Illinois resident. (Pl. App. at 2-3). Mrs. Skiles purchased Hershey from Mr. French in July 2003 for her husband's birthday. (*Id.* at 5, 37, 70, 72). The Skiles had registration papers for Hershey and obtained dog tags for him through Carroll County, Illinois. (*Id.* at 6, 29).

Mount Carroll Veterinary Clinic records for Hershey list the "clients" as Raymond and Julie Skiles. The Skiles paid all of Hershey's veterinary bills. (Pl. App. at 11, 55-66).

On July 2, 2006 Hershey bit the Skiles' one-year-old daughter on the face. (Pl. App. at 8). A report from the Carroll County Animal Control Department of the same date indicated Hershey's owners were Raymond and Julie Skiles. (*Id.* at 65). The Skiles admitted they owned Hershey jointly at that time and paid the bill for a ten-day confinement. (*Id.* at 10-11).

On November 20, 2006 Hershey bit the Skiles' daughter a second time on the face. (Pl. App. at 9). After this incident, Julie Skiles suggested Hershey should be put down. (*Id.* at 19). Mr. French objected. (*Id.* at 20). At Mr. French's suggestion, Raymond Skiles brought Hershey to the French residence where he was kept in a kennel in a pole barn on the premises. (*Id.* at 19-20). Other than providing one bag of dog food at the time Hershey was given over to Mr. French, the Skiles did not thereafter provide any further food or support for Hershey's maintenance. (*Id.* at 19, 38). Jeffrey French took care of Hershey. (*Id.* at 38). There is a dispute concerning who was supplied Hershey's kennel at the French residence. Mr. French testified Mr. Skiles brought it over, Mr. Skiles testified Mr. French built a kennel in his pole barn for Hershey. (*Id.* at 18, 38). Hershey stayed at the French residence from November 2006 until April 2008. (*Id.* at 19-20). The Skiles did

not give Mr. French a bill of sale nor did they notify Carroll County Hershey was no longer their animal. (*Id.* at 21).

Initially Mr. French assumed that Hershey would be staying at his residence on a temporary basis. He testified that Mr. Skiles stated he had to wait for things to settle down at home. (Pl. App. at 39-40). There was discussion between Mr. French and Mr. Skiles about putting Hershey to sleep. (*Id.* at 31). Mr. French objected to this and told Mr. Skiles "Hershey will be fine. He can stay here until you guys make your decision." (*Id.* at 39-40). After several months Mr. French concluded Hershey would not be returning to the Skiles' residence. (*Id.* at 31). Mr. French had discussions with both of the Skiles about keeping Hershey permanently. (*Id.* at 40).

Mrs. Skiles testified in her deposition that when Hershey was taken to Mr. French's residence in November 2006 it was her understanding Hershey was no longer her dog. Her intent was that Hershey never return to her residence. (Pl. App. at 31).

Mr. Tipp planned to go camping at Sabula Lake the weekend of June 29 - July 1, 2007 with Ms. Wurster. He wanted to take Hershey with him and asked Mr. French for permission. Mr. French told him Hershey was not his dog and that he should ask Mr. Skiles. (Pl. App. at 48). Mr. Tipp says he then asked Mr. Skiles, who responded only that he did not think it would be a good idea. (*Id.*) Mr. Skiles has testified Mr. Tipp told him he was taking the dog

and that he (Skiles) told Mr. Tipp that was not a good idea. (*Id.* at 23).

At the end of work on Friday, June 29, Mr. Tipp and Mr. Skiles, who rode to and from work together, picked up Hershey from the French residence. (Pl. App. at 49). This was the first and only weekend Mr. Tipp took Hershey from the French residence. (*Id.*) He was aware Hershey had bitten the Skiles' daughter once, but did not know it had happened twice. (*Id.* at 49). Mr. Tipp testified he was given no instructions regarding Hershey and has admitted he was responsible for Hershey's care and supervision on June 30, 2007. (*Id.* at 49-50). Mr. Tipp took Hershey to the campground where on June 30 the dog came into contact with and bit A.E.S. on the face. After the incident, Mr. Tipp told Mr. French he felt like putting a bullet in Hershey's head, to which Mr. French responded, "Nobody's -- no, you're not. No you're not. Just take him -- take him home, take him to my house." (*Id.* at 52).

After the June 30 incident, Hershey remained at the French residence. (Pl. App. at 42). Mr. French offered to take Hershey and keep him; Mrs. Skiles told him "absolutely not" which Mr. French took to mean Mrs. Skiles wanted Hershey put down. (*Id.*) On or about April 11, 2008 Mr. Skiles received a communication[1] from his insurance company informing him if Hershey was not put

---

[1] Either a letter or telephone call, Mr. Skiles' recollection was not clear. (Pl. App. at 12-14).

down by 3:00 p.m., his insurance would be cancelled. (*Id.* at 13). Mr. Skiles asked Mr. French if he would take Hershey to the veterinarian for this purpose. Mr. French refused. (*Id.* at 42). A friend and co-worker of Mr. Skiles, Larry Brown, agreed to take Hershey to the veterinarian. (*Id.* at 15). Mr. Brown picked up Hershey at the French residence and took him to the Mount Carroll Veterinary Clinic. (*Id.*) The veterinarian obtained telephone permission from Mr. Skiles to put Hershey down. (*Id.* at 12-13). Hershey was euthanized on April 11, 2008. (*Id.* at 66).

## III.

### DISCUSSION

Iowa Code § 351.28 provides that "[t]he owner of a dog shall be liable to an injured party for all damages done by the dog, when the dog is . . . attacking or attempting to bite a person. . . ." The statute does not define "owner," though it used to. In 1994 the Iowa legislature repealed the definition of "owner" in former Iowa Code § 351.2[2] leaving no statutory definition and sending the law back to the old, more narrow common law definition of owner set out in *Alexander v. Crosby*, 143 Iowa 50, 53, 119 N.W. 717, 718 (1909). *See Fouts ex rel. Jensen v. Mason*, 592 N.W.2d 33, 36-37 (Iowa 1999)(quoting and citing *Alexander*). As explained in *Fouts*, *Alexander* held:

---

[2] Former § 351.2 stated: "The term 'owner' shall, in addition to its ordinary meaning, include any person who keeps or harbors a dog." Iowa Code § 351.2 (1989).

> . . .[W]hile liability is imposed on the legal owner, ownership could be shown by establishing that 'the defendant had the dog in his possession and was harboring it on his premises as owners usually do with their dogs.' *Alexander*, 143 Iowa at 53, 119 N.W. at 718. Presumably, establishing legal title in these circumstances is not an absolute requirement. Thus, where there is no evidence of legal ownership, the plaintiff can still prove the defendant is the owner of the dog by showing that (1) the dog was in the defendant's possession and (2) the defendant was harboring the dog on the defendant's premises as owners usually do with their dogs.

*Id.* In *Fouts* there was uncontroverted evidence of legal ownership and therefore it was not necessary to address whether a neighbor who walked, fed and petted the dog was an owner for having harbored the dog. *Id.*

The Skiles defendants raise an interesting preliminary choice of law question. Citing the conflict rules in Restatement (Second) Conflict of Laws §§ 244, 247 pertaining to conveyances of, and property interests in chattels, they contend the definition of an animal owner in section 5/2.16 of the Illinois Animal Control Act should determine ownership as between defendants as Illinois citizens. 510 ILCS 5/2.16. The Illinois statute defines "owner" more broadly to include "any person having a right of property in an animal, or who keeps or harbors an animal, or who has it in his care, or acts as its custodian, or who knowingly permits a dog to remain on any premises occupied by him or her." *Id.*; *see Beggs v. Griffith*, 393 Ill. App. 3d 1050, 1053, 913 N.E.2d 1230, 1234-35

(2009)(quoting 2004 version of the statute). The focal point under Illinois law is the moment at which the injury-producing incident takes place. *Id.* at 1235.

A federal court sitting in a diversity case must apply the choice-of-law rules of the forum state. *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009). With respect to tort claims Iowa follows the "'most significant relationship' methodology for choice of law issues" laid out in Restatement (Second) Conflicts of Laws § 145 (1971) ("Restatement"). *Veasley v. CRST Intern., Inc.*, 553 N.W.2d 896, 897 (Iowa 1996). With respect to tort claims, the Restatement articulates a number of considerations and principles to guide the significant relationship inquiry, but the basic rule is:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . .

Restatement § 145.

If Hershey had managed to get loose in Iowa and the issue was who as between the Skiles and Mr. French had the property rights to claim him from a shelter, the case for Illinois law would be clearer. When the issue is, as here, who is responsible for an attack by Hershey on an Iowa child in an Iowa campground, Iowa public policy implications are more involved. It is not necessary

10

to determine the choice of law issue at this juncture. For the purposes of the present motion the Court applies Iowa law.

The parties seem to agree the evidence would support a finding that Mr. and Mrs. Skiles, Mr. French, or all three were the owners of Hershey at the time of the incident. Plaintiffs argue the underlying facts are undisputed, which they mostly are, and establish as a matter of law that all were the owners of Hershey or, if not all, the Court should declare which defendants are the owner(s) subject to strict liability under § 351.28. Defendants respond that while the facts are not disputed, the reasonable inferences to be taken from them are making summary judgment inappropriate. Plaintiffs rejoin that the inferences defendants refer to are legal conclusions, not factual inferences.

On summary judgment the Court is required to view not only the evidence, but also the reasonable inferences which may be drawn from the evidence favorably to the non-moving parties. *Mack v. Dillon*, 594 F.3d 620, 622 (8th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *Hervey*, 527 F.3d at 719. The U.S. Supreme Court has instructed that "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). For its part, the Eighth Circuit has observed "[s]ummary judgments in favor of parties who have the burden of

proof are rare, and rightly so." *Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir. 1998).

Under *Alexander* and *Fouts* the first inquiry is legal ownership. When a pet is placed in the long-term possession of another without any sort of documentation legal ownership is determined by what the parties intended, inherently a factual issue. Viewing the evidence and inferences from it favorably to the Skiles, the jury might reasonably find that for all intents and purposes Mr. French was the legal owner of Hershey at the time he bit A.E.S. When the Skiles, at Mr. French's invitation, returned Hershey to Mr. French, from whom Hershey had been purchased a few years before, after Hershey bit their daughter a second time, Mrs. Skiles believed that Hershey was no longer their dog. Mr. Skiles was initially more uncertain about who would eventually end up with Hershey, but the jury could consider that as time went by he too viewed Mr. French's possession of Hershey as permanent, as did Mr. French. After Hershey was taken to Mr. French's residence the Skiles had nothing to do with him. They did not care for him, or exercise any rights of ownership until compelled by their insurance company to insist on his destruction after the injury to A.E.S.

On the other hand, viewing the evidence and inferences from it favorably to Mr. French, the jury might reasonably find that while he agreed to take Hershey, he did not become the dog's legal owner. That he never intended to assume ownership is

12

evidenced by the fact that when Mr. Tipp asked to take Hershey to the campground Mr. French responded that Hershey was not his and he should ask Mr. Skiles. Also, a fundamental attribute of ownership of an animal is the right to decide when to end its life. Though Mr. French did not want Hershey put down, he acceded to the Skiles' demand that Hershey be euthanized. It was Mr. Skiles who gave the final instructions to the veterinarian.

Apart from legal ownership, it is uncontroverted that after November 2006 Mr. French had possession of Hershey and harbored him on his property as owners usually do with their dogs. A jury could find from this that Mr. French was Hershey's owner for the purposes of § 351.28, but the Iowa Supreme Court's opinion in *Fouts* indicates the jury would not be compelled to find liability against Mr. French as a "harboring" owner if it finds the Skiles were the sole legal owners of Hershey. 592 N.W.2d at 37.

Finally, the jury could reasonably find from the evidence and inferences from it that the Skiles and Mr. French were co-owners of Hershey. The Skiles never took any definitive steps to divest themselves of Hershey's legal ownership which they clearly had when Mr. French took the dog. They had purchased Hershey, obtained his dog tags, took him to the veterinarian, and cared for him. The Skiles gave possession of Hershey to Mr. French, but Mr. French and Mr. Skiles had initially viewed this as a temporary situation. It is not clear that a mutual understanding of change of

ownership occurred after that. The Skiles made the decision to put Hershey down, but until then Mr. French, as noted, had possession of Hershey and harbored him on his premises. From the evidence that all of the defendants acted as owners, all were familiar with Hershey and his history of biting children, a jury might reasonably find that all are co-owners.

The different inferences which can reasonably be drawn from the evidence in the summary judgment record precludes the Court from adjudicating that any defendant was a § 351.28 owner of Hershey as a matter of law.

Motion [32] **denied**.

IT IS SO ORDERED.

Dated this 24th day of March, 2010.

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE